[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13594
Non-Argument Calendar

_____

Agency No. A017-057-819

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2012
JOHN LEY
CLERK

CESAR AUGUSTO BEDOYA YEPES,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 10, 2012)

Before EDMONDSON, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Cesar Augusto Bedoya Yepes ("Bedoya") petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") decision finding him removable under Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(ii), and pretermitting his application for cancellation of removal under 8 U.S.C. § 1229b(a). The BIA concluded that Bedoya was statutorily ineligible for cancellation of removal because he had not shown that he had not been convicted of an aggravated felony, namely, a fraud offense for which the loss to the victim exceeded $10,000. In reaching its conclusion, the BIA relied upon a restitution order entered against Bedoya for $38,538, stemming from his convictions for one count of second-degree theft, one count of fraudulent use of a credit card for $100 or more, two counts of forgery of a check, and two counts of uttering a forged instrument or check.

On appeal, Bedoya argues that: (1) the BIA erred in combining the losses that resulted from two separate offenses of uttering of a forged instrument in order to reach the $10,000 threshold; (2) none of the convictions to which he pled guilty resulted in a loss over $10,000; (3) he was eligible for cancellation of removal; and (4) in the alternative, we should apply the "rule of lenity" and resolve in his favor the ambiguity about whether the agency statutorily was permitted to combine loss amounts in cases like his. After thorough review, we deny the petition.

2

We review de novo whether we have jurisdiction to consider a petition for review. Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007). We review also de novo the BIA's legal determinations. Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006).

We review only the decision of the BIA, except to the extent that the BIA expressly adopted the opinion of the IJ. Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009). Because the BIA here did not expressly adopt the IJ's decision, we will review only the BIA's order. See id.[1]

As an initial matter, we must determine whether we have jurisdiction to review the BIA's removal order. We lack jurisdiction to review a final order of removal when, inter alia, the alien is inadmissible for having committed two crimes of moral

---

[1] However, we will not consider Bedoya's argument on appeal that reliance on the restitution order in his case at this stage of the proceedings would violate his due process rights because Bedoya, by not raising the claim in his initial brief and raising it for the first time in his reply brief, has abandoned the issue. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1282 n.12 (11th Cir. 2001). Furthermore, several of Bedoya's claims on appeal inaccurately identify some of the IJ's findings as being determinations made by the BIA. First, Bedoya's argument that the BIA erred in combining the losses from two separate offenses in reaching the $10,000 threshold (as well as his "alternative" rule-of-lenity argument) mischaracterizes the BIA's order because the BIA did not add the amounts of the two separate checks in making its cancellation-of- removal determination. To the extent that Bedoya's argument on appeal is a challenge to the IJ's determination that the check amounts could be combined, we will not review this challenge because review is limited to the BIA's order, which did not expressly adopt the IJ's opinion. See Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1344 (11th Cir.2007) (explaining that because the IJ determination that petitioner challenged had not been adopted by the BIA, it did not form part of the order under review). Nor do we consider Bedoya's claim that a showing of a scheme to defraud was necessary because the BIA expressly declined to consider the issue. See id.

turpitude for which a sentence of one year or longer may be imposed, as provided in 8 U.S.C. § 1227(a)(2)(A)(ii). 8 U.S.C. § 1252(a)(2)(C). When the bar to review under § 1252(a)(2)(C) is implicated, "we retain jurisdiction to determine whether the statutory conditions for limiting judicial review exist." Keungne v. U.S. Att'y Gen., 561 F.3d 1281, 1283 (11th Cir. 2009). That is, we must determine whether a petitioner is "(1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense." Id. (quotations omitted). If these conditions are met, § 1252(a)(2)(C) divests us of jurisdiction to review the removal order. See id. at 1284. Section 1252(a)(2)(C) divests us of jurisdiction if the alien "does not contest that he is an alien removable for prior disqualifying crimes." Camacho-Salinas v. U.S. Att'y Gen., 460 F.3d 1343, 1346 (11th Cir. 2006). However, even if the jurisdictional bar of § 1252(a)(2)(C) applies, we still retain jurisdiction to consider constitutional challenges and "questions of law" arising out of the alien's removal proceedings. 8 U.S.C. § 1252(a)(2)(D).

In this case, we lack jurisdiction under § 1252(a)(2)(C) to consider the BIA's final order of removal because Bedoya has not contested that he is an alien who is removable for having committed two disqualifying crimes involving moral turpitude. Nevertheless, we retain jurisdiction under § 1252(a)(2)(D) to consider the BIA's non-

4

discretionary legal determination that Bedoya was statutorily ineligible for cancellation of removal since he had not shown that he was not an aggravated felon.

That said, we find no merit to Bedoya's claim that the agency erred in determining that Bedoya was statutorily ineligible for cancellation of removal. The Attorney General has discretion to cancel the removal of an otherwise inadmissible or deportable alien if the alien "(1) has been . . . lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a). The burden of proof is on the alien to show that he satisfies the applicable eligibility requirements for relief from removal and is entitled to a favorable exercise of discretion. 8 C.F.R. § 1240.8(d). "If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." Id. An "aggravated felony" under the INA includes, in relevant part, "an offense . . . that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).

In Jaggernauth v. U.S. Att'y Gen., 432 F.3d 1346 (11th Cir. 2005), we reviewed an alien's petition for review of a decision of the former Immigration and

5

Naturalization Service ("INS") finding the alien removable because her conviction for grand theft was an aggravated felony. Id. at 1347-48. We noted that the INS was required to show by "clear, unequivocal, and convincing evidence" that the alien's conviction constituted a "theft offense" under the INA. Id. at 1352. We agreed with the alien that the statute under which she was convicted was divisible and encompassed some offenses that would constitute an aggravated felony and other offenses that would not. Id. at 1354-55. We concluded that, because the statutory language and the fact of conviction were insufficient to determine whether the alien had committed an aggravated felony, the BIA was permitted to look at the alien's record of conviction, "includ[ing] the charging document, plea, verdict or judgment, and sentence." Id. at 1355. We further concluded that, in light of the alien's record of conviction, the INS had not shown by clear and convincing evidence that the alien's conviction was an aggravated felony. Id. In addition, we said:

> [W]e disagree with the BIA that [the alien]'s simultaneous conviction for resisting a merchant establishes that her grand theft conviction was an aggravated felony. The BIA was permitted to look only at the record of conviction for the offense alleged to be an aggravated felony -- not to the record of a separate misdemeanor offense. We can find no authority, and the BIA cites none in its order, that permits the combining of two offenses to determine whether one or the other is an aggravated felony.

Id.

6

Later, in Nijhawan v. Holder, 129 S.Ct. 2294 (2009), the Supreme Court determined that § 1101(a)(43)(M)(i)'s reference to a loss exceeding $10,000 referred to the particular circumstances of the alien's commission of a fraud offense, rather than a statutory element of the fraud or deceit crime. Id. at 2297-98. The petitioner in Nijhawan had been convicted in federal court of conspiracy to commit mail fraud, wire fraud, bank fraud, and money laundering. Id. at 2298. The jury that convicted him had not made any finding as to loss, but an order of restitution of $683 million was entered against him, and he had stipulated to a loss of over $100 million. Id. The Court explicitly rejected a categorical approach and held that a circumstance-specific approach was appropriate in determining the loss amount. Id. at 2300. The Court stated that "the loss must be tied to the specific counts covered by the conviction." Id. at 2303. The Court also said that there was "nothing unfair" about the IJ's reliance upon certain materials, including the order of restitution against the petitioner, in determining that the loss exceeded $10,000. Id.

Here, Bedoya has not shown that the agency erred in concluding that he was statutorily ineligible for cancellation of removal. As we've said, Bedoya had to show by a preponderance of the evidence that he had not committed an aggravated felony. See 8 U.S.C. § 1229b(a); 8 C.F.R. § 1240.8(d). Under Nijhawan's circumstance-specific approach, the agency was allowed to consider the record from

7

Bedoya's conviction, including the amount of any restitution order. 129 S.Ct. at 2303. The record from Bedoya's criminal proceedings indicates that Bedoya was ordered to pay a total of $38,538 in restitution to the victim as to all of his counts of conviction, which included two counts of uttering of a forged instrument. Despite having the burden to show by a preponderance of the evidence that the loss amount was not in excess of $10,000, Bedoya has not objected to this amount or identified any evidence that would explain how the sentencing court calculated his restitution amount. Therefore, Bedoya has not shown by a preponderance of the evidence that he had not committed a fraud offense for which the loss exceeded $10,000. See 8 U.S.C. § 1101(a)(43)(M)(i).

Although Bedoya argues that the loss as to his fraud counts was limited to the face amount of the checks, and that any restitution amount in excess was derived from the other counts of conviction, the burden was on Bedoya to explain any discrepancy between the amount related to the two fraud counts and the restitution amount. See 8 C.F.R. § 1240.8(d). There is nothing in the record to support Bedoya's conclusion that the amount of restitution in excess of the face amount of the checks necessarily was tied to the other counts of conviction. Because it was Bedoya's burden to show that the loss to the victim was not in excess of $10,000, and because he has not met that burden here, the agency did not err in concluding that he was ineligible for

8

cancellation of removal.  See 8 U.S.C. § 1229b(a).

Finally, Bedoya's arguments regarding Jaggernauth are without merit.  First, in Jaggernauth, the burden was on the government to show by clear and convincing evidence that the alien's conviction was an aggravated felony, whereas here, the burden was on Bedoya to show that his conviction was not an aggravated felony.  See Jaggernauth, 432 F.3d at 1352.  Second, Jaggernauth applied a modified categorical approach, which the Supreme Court in Nijhawan expressly rejected for purposes of the loss-amount determination.  See Nijhawan, 129 S.Ct. at 2300; Jaggernauth, 432 F.3d at 1354-55.  Third, while Jaggernauth did reject the combination of multiple offenses in determining whether a petitioner had committed an aggravated felony, we were addressing the different issue of the government's attempt to combine a theft offense with a separate misdemeanor offense of resisting a merchant to determine that one or the other was an aggravated felony.  432 F.3d at 1355.  Here, the BIA did not combine any of the elements of Bedoya's offenses together and did not combine the losses from separate offenses, but instead concluded in light of the restitution order that the loss amount of each individual fraud count may have been in excess of $10,000.  Therefore, Jaggernauth is inapplicable, and we deny the petition.

**PETITION DENIED.**

9